No. 24-20495

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

SCOTT MARTIN,

Plaintiff-Appellant,

*versus*

MARILYN BURGESS, HARRIS COUNTY DISTRICT CLERK *in her Official and Individual Capacities*; JUDGE GENESIS DRAPER, *in her Official and Individual Capacities*; JUDGE SHANNON BALDWIN, *in her Official and Individual Capacities*,

Defendants-Appellees.

On Appeal from the United States District Court
for the Southern District of Texas
Civil Action No. 4:23-cv-3228

BRIEF OF APPELLANT SCOTT MARTIN

*Submitted by*:
Randall L. Kallinen & Alexander C. Johnson
Kallinen Law PLLC
511 Broadway Street
Houston, Texas 77102
Telephone: 713.320.3785
**Attorneys for Appellant**

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in 5th Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| Appellant: | Counsel for Appellant: |
| --- | --- |
| Scott Martin | Randall Kallinen & Alexander Johnson<br>Kallinen Law PLLC, Houston, TX |

| Appellees: | Counsel for Appellees: |
| --- | --- |
| Marilyn Burgess, Judge<br>Genesis Draper, Judge<br>Shannon Baldwin | Suzanne Renee Bradley<br>Harris County Attorney's Office,<br>Houston, TX |

District Judge George C. Hanks, Jr.

Magistrate Judge Andrew M. Edison

*/s/ Alexander C. Johnson*
Alexander C. Johnson
**Attorney for Appellant**

# Statement Regarding Oral Argument

The basis of this lawsuit is factually intensive, and Appellant respectfully suggests that the Court would benefit from hearing oral arguments. Mr. Martin moves pursuant to Federal Rule of Appellate Procedure 34(a) to add this case to the argument calendar. This case meets the standards in Rule 34(a)(2) for oral argument, in that (a) this appeal is not frivolous, (b) the dispositive issues raised in this appeal have not been recently and authoritatively decided, and (c) the decisional process would be significantly aided by oral argument.

Further elucidation beyond the cold facts in the briefs would assist the Court in these proceedings, along with a detailed discussion of the complex legal issues presented. Appellant seeks a reversal of the district court, and it is an understanding of the nuances in the facts and legal reasoning that oral argument would benefit.

# TABLE OF CONTENTS

Certificate of Interested Persons     i

Statement Regarding Oral Argument     ii

Table of Contents     iii

Table of Citations     iv

Jurisdictional Statement     1

Statement of the Issues     1

Statement of the Case     2

    **Course of Proceedings**     **2**

    **Statement of Facts**     **3**

    **Standard of Review**     **5**

Summary of the Argument     7

Argument     7

    **1. Appellant has a clear right to the information at issue under the First Amendment, Sixth Amendment, and Texas State law.**     **11**

    **2. Appellant independently also has a right to redress from the harm caused by an *ultra vires* action.**     **15**

    **3. None of Appellees' immunities claimed below apply.**     **17**

Conclusion     19

Certificate of Service     20

Certificate of Compliance     20

# TABLE OF CITATIONS

## CASES

*ACLU v. Holder*, 652 F. Supp. 2d 654 (E.D. Va. 2009) ............................ 11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................... 6

*Bates v. State Bar of Arizona*, 433 U.S. 350, 376 (1977) ............................. 12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 554 (2007) .......................................... 6

*Black v. Griffin*, 638 F. Appx. 371 (5th Cir. 2016) ...................................... 17

*Brand Coupon Network LLC v. Catalina Mktg. Corp.*, 748 F.3d 631 (5th Cir. 2014) ................................................................................................ 6

*Chrissy F. by Medley v. Miss. Dep't of Pub. Welfare*, 925 F.2d 844 (5th Cir. 1991) ............................................................................................... 18

*City of El Paso v. Heinrich*, 284 S.W.3d 366 (Tex. 2009) ............................ 16

*City of Lancaster v. Chambers*, 883 S.W.2d 650 (Tex. 1994) ....................... 18

*Daves v. Dallas Cty.*, 22 F.4th 522 (5th Cir. 2022) ..................................... 17

*Erickson v. Pardus*, 551 U.S. 89 (2007) ....................................................... 7

*Ex parte Young*, 209 U.S. 123 (1908) ........................................................ 16

*Ficker v. Curran*, 119 F.3d 1150 (4th Cir. 1997) ................................... 12, 13

*Globe Newspaper Co. v. Superior Court*, 457 U.S. 596 (1982) ...................... 11

*Griswold v. Connecticut*, 381 U.S. 479 (1965) ............................................. 14

*Grove Fresh Distribs. v. Everfresh Juice Co.*, 24 F.3d 893 (7th Cir. 1994) .... 11

*Haase v. Countrywide Home Loans, Inc.*, 748 F.3d 624 (5th Cir. 2014) ......... 5

*Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141 (5th Cir. 2009) ...... 6

*IDT Corp v. eBay, Inc.*, 709 F.3d 1220 (8th Cir. 2013) ............................... 11

*In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569
    (8th Cir. 1988) ....................................................................................... 11

*In re Supreme Beef Processors, Inc.*, 468 F.3d 248 (5th Cir. 2006) ................... 6

*Larson v. Domestic & Foreign Commerce Corp*, 337 U.S. 682 (1949)............ 16

*Leedom v. Kyne*, 358 U.S. 184 (1958).......................................................... 16

*Los Angeles Police Department v. United Reporting Publishing Corp.*, 528 U.S.
    32 (1999) ........................................................................................... 8, 9

*Mathews v. Eldridge*, 424 U.S. 319 (1976) .................................................. 15

*Nixon v. Warner Commc'ns*, 435 U.S. 589 (1978); ....................................... 11

*Peel v. Attorney Registration and Disciplinary Comm'n of Ill.*, 496 U.S. 91
    (1990) .................................................................................................... 12

*Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1974) .......... 15

*Press–Enterprise Co. v. Superior Court of California*, 464 U.S. 501 (1984).... 11

*Pruett v. Harris Cty. Bail Bond Bd.*, 499 F.3d 403 (5th Cir. 2007)............. 12

*Richmond Newspapers v. Virginia*, 448 U.S. 555 (1980) .............................. 11

*Scham v. District Courts Trying Criminal Cases*, 967 F. Supp. 230 (S.D. Tex.
    1997) .................................................................................................. 3, 15

*Seattle Times Co. v. United States Dist. Court for Western Dist.*, 845 F.2d 1513
    (9th Cir. 1988) ...................................................................................... 11

*SEC v. Van Waeyenberghe*, 990 F.2d 845 (5th Cir. 1993)........................... 11

*Shapero v. Kentucky Bar Ass'n*, 486 U.S. 466 (1988) .................................... 12

*Sweetin v. City of Texas City*, 48 F.4th 387 (5th Cir. 2022) ........................ 18

*Telthorster v. Tennell*, 92 S.W.3d 457 (Tex. 2002) ........................................ 18

*United States v. Amodeo*, 71 F.3d 1044 (2d Cir. 1995) ............................... 11

*United States v. Chagra*, 701 F.2d 354 (5th Cir. 1983) ............................... 11

*Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council*, 425

U.S. 748 (1976) ............................................................................... 12

*Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724 (5th Cir. 2019) ............. 6

STATUTES

Tex. Code Crim. Proc. Ch. 55A, *et seq.* ..................................................... 14

Tex. Code Crim. Proc. Ch. 58, *et seq.* ........................................................ 14

Tex. Gov't Code § 552.001 ..................................................................... 14

Tex. Gov't Code § 552.022 ..................................................................... 14

Tex. Gov't Code § 552.117 ..................................................................... 14

OTHER AUTHORITIES

Texas Office of the Attorney General's Opinion No. JC-0022 (issued Mar.

12, 1999) ......................................................................................... 12

RULES

Fed. R. Civ. P. 12(b)(6) .......................................................................... 6

Fed. R. Civ. P. 8(a)(2) ............................................................................ 7

Tex. R. Jud. Admin. 12 ........................................................................... 16

# JURISDICTIONAL STATEMENT

Jurisdiction exists under 28 U.S.C. § 1331 federal question jurisdiction because this case arises under 42 U.S.C. § 1983 for an alleged violation of Appellant's civil rights. Jurisdiction also exists under 28 U.S.C. § 1343(3) to redress the deprivation of Appellant's civil rights. This Court has jurisdiction under 28 U.S.C. § 1291 as an appeal from the final decision of a district court, and under Federal Rule of Appellate Procedure 4.

# STATEMENT OF THE ISSUES

1. Whether Appellant's First and Sixth Amendment rights were violated by the Bond Order.
2. Whether Appellant's rights were violated by the Bond Order because it was issued *ultra vires* and without process.
3. Whether any of Appellees' claimed immunities apply.

# STATEMENT OF THE CASE

**Course of Proceedings**

This civil rights case was originally filed on August 31st, 2023, and the complaint included an application for a temporary restraining order.[1] The case was initially assigned to Judge Hoyt, who recused himself, and was then assigned to Judge Hanks.[2] Defendants filed the required premotion materials to have a motion to dismiss heard, and Plaintiff responded,[3] and deadlines were set with respect to that motion and the temporary restraining order.[4] The requisite motions and responses were filed (along with a supplement by Plaintiff),[5] and the case was then referred to U.S. Magistrate Judge Edison.[6] Plaintiff agreed to dismiss all the Defendants except those that are present in this Appeal.[7] In considering the motion to dismiss and restraining order, Judge Edison directed additional limited briefing and research on a handful of questions, which both parties provided.[8] Judge Edison then denied the restraining order and granted the motion to dismiss,

---

[1] ROA.4 (Doc. 1).

[2] ROA.4 (Doc. 7).

[3] ROA.4–5 (Docs. 9, 11, 12, 14).

[4] ROA.5 (Docs. 15, 16, 17).

[5] ROA.5–6 (Docs. 20, 21, 22, 24, 25, 27).

[6] ROA.6 (Docs. 28–33).

[7] ROA.6 (Docs. 37–38).

[8] ROA.6–7 (Docs. 39–42).

issuing final judgment the same day. Plaintiff-Appellant timely filed his notice of appeal.[9]

**Statement of Facts**

Importantly, the facts of this case occur in the broader history and context of the criminal courts in Harris County. Specifically, Harris County has two sets of criminal courts: the Harris County District Courts Trying Criminal Cases, which try felonies (Felony Courts), and the Harris County Criminal Courts at Law, which try misdemeanors (HCCCL, or Misdemeanor Courts).[10] In 1988, the Felony Courts issued an order to the Harris County District Clerk and the Harris County Sheriff (each of which are separate entities from each other and from the Felony Courts) to cease the disclosure of criminal defendants' street addresses and telephone numbers until they had retained an attorney.[11] The Felony Courts were sued over the order and the Southern District of Texas struck it down as unconstitutional and *ultra vires*.[12]

---

[9] ROA.7 (Docs. 43–45).

[10] ROA.11 (¶¶ 4–5).

[11] ROA.11 (¶ 5).

[12] *Scham v. District Courts Trying Criminal Cases*, 967 F. Supp. 230 (S.D. Tex. 1997); *see also* ROA.23–32 (the order on summary judgment in that case).

On June 27th, 2023, the Misdemeanor Courts issued an effectively equivalent order (the Bond Order) to the Harris County District Clerk to keep *all* information (including contact information) confidential except the title, filing date, and page enumeration on *all* General Order Bonds (GOBs) and Personal Bonds (PR Bonds).[13] The Bond Order was issued by then-Presiding Judge Genesis Draper, and has been continued under now-Presiding Judge Shannon Baldwin.[14] It was *not* issued pursuant to any case or controversy.[15] District Clerk Marilyn Burgess has gone beyond enforcing the four corners of the Bond Order, and has made other Bonds from both the Misdemeanor and Felony Courts confidential.[16]

Appellant Scott Martin has been in the business of direct mail marketing for attorneys for decades, and until the Bond Order was issued, he has relied on the available bond information from the District Clerk to operate his business.[17] His clients also rely on the information Scott received from the District Clerk, as well as his services, to maintain a sustainable flow of business, and as required, the advertising

---

[13] ROA.11–12 (¶ 5), *see also* ROA.33 (Bond Order).

[14] ROA.11–12 (¶ 5).

[15] ROA.17 (¶ 25).

[16] ROA.12 (¶ 6); *see also* ROA.197–201 (Doc. 27, Appellant's supplement describing further restrictions and damages).

[17] ROA.13 (¶¶ 12–13).

materials they send are approved by the State Bar of Texas.[18] Both attorney advertising and direct mail marketing are important services to the criminal justice system for a variety of reasons, and attorney advertising specifically is a well-protected form of commercial speech.[19] After the Bond Order was issued, Mr. Martin and some of his clients reached out to the Misdemeanor Court, Judges Baldwin and Draper, and Judges' Counsel Ashley Guice, but discussions ceased without further word or action from Appellees.[20] As a result of the Bond Order and Appellee Burgess's expansion of the Bond Order, Mr. Matin and his clients have suffered substantial losses.[21] Because of those losses and because talks with Appellees directly were unsuccessful, Appellant filed the present action.

## Standard of Review

On appeal, motions to dismiss are considered *de novo*.[22]

On a motion to dismiss for failure to state a claim, a court may only dismiss a complaint as a matter of law where the plaintiff fails to state

---

[18] ROA.13, 15 (¶¶ 13, 15–16).

[19] ROA.14–15 (¶¶ 14–15).

[20] ROA.16 (¶¶ 20–24).

[21] ROA.17 (¶¶ 28–29); *see also* ROA.197–201 (Doc. 27, Appellant's supplement describing further restrictions and damages).

[22] *Haase v. Countrywide Home Loans, Inc.*, 748 F.3d 624, 630 (5th Cir. 2014) (citation omitted).

a claim upon which relief may be granted.[23] A complaint must survive when it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[24] Put differently, "[a] claim may *not* be dismissed unless it appears *certain* that the plaintiff cannot prove *any* set of facts that would entitle [them] to legal relief."[25] As a result, motions to dismiss are "viewed with disfavor" and "rarely granted" in this Circuit.[26]

The Court must accept the Plaintiff's well-pled facts as true, and view them in the light most favorable to the Plaintiff, making reasonable inferences and resolving contested facts and factual ambiguities in the Plaintiff's favor.[27] Plausibility under this standard is unrelated to probability, but "asks for more than a sheer possibility that a defendant has acted unlawfully."[28] The inquiry is generally limited to the contents of the pleading and its attachments.[29] Read in combination

---

[23] Fed. R. Civ. P. 12(b)(6).

[24] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).

[25] *In re Supreme Beef Processors, Inc.*, 468 F.3d 248, 251 (5th Cir. 2006) (internal citation omitted) (emphasis added).

[26] *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009) (internal quotations and citations omitted).

[27] *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) (citations omitted).

[28] *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[29] *Brand Coupon Network LLC v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014).

with Federal Rule of Civil Procedure 8(a)(2), "[s]pecific facts are not necessary," as the pleadings need only provide "fair notice of what the . . . claim is and the grounds upon which it rests."[30]

## SUMMARY OF THE ARGUMENT

Appellant has several rights here that were violated. First, his First and Sixth Amendment rights, in combination with Texas State law, clearly entitle him access to the information restricted by the Bond Order. Second, the fact that the Bond Order was issued *ultra vires* and entirely without process also entitles him to relief from the harm caused, irrespective of the independent right to that information. And finally, none of the immunities claimed apply because the Bond Order was issued *ultra vires*, not pursuant to a judicial proceeding, and immunity was not conclusively established.

## ARGUMENT

At its heart, this case is fairly straightforward: Mr. Martin was harmed by Appellees' *ultra vires* issuance and application of the Bond Order, and seeks to redress the harm that resulted from Appellees' overstepping their authority. The district court in *Scham* correctly

---

[30] *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (internal citations omitted).

reached that result, and it should have done the same here for this identical-in-effect Bond Order. In short, the Bond Order is extraordinarily broad, as it makes confidential otherwise presumed-public information in entire categories of cases, without regard to the specifics of each case, and presumes to extend authority over a State elected official in her own, separate office absent a case or controversy.

The district court had two main hangups in reaching that result. First, it believed that the U.S. Supreme Court's decision in *United Reporting*[31] squarely governs this case and justifies the Bond Order.[32] And second, it did not believe that Appellant could assert a right of access to the information in question.[33]

Appellant will address the second question in two ways *ante*: first by showing that a right to the publication of that information exists, and second by showing that a right to protection from the harm of *ultra vires* actions also exists.

But first, it is worth noting that the district court's reliance on *United Reporting* is misplaced. In *United Reporting*, the State of California changed a statute that previously required law enforcement agencies to

---

[31] *Los Angeles Police Department v. United Reporting Publishing Corp.*, 528 U.S. 32 (1999).
[32] ROA.236–37.
[33] ROA.238–42.

publish information (including name and address) about *arrestees*.[34] While some arrestees are ultimately prosecuted as a result of their arrest, the mere fact of arrest does not open or necessitate legal proceedings against the arrestee. Here, however, the State has instigated legal proceedings against an individual and issued a bond pursuant to that proceeding. In that process, the information at issue becomes part of the public record before it is then removed and restricted by the District Clerk pursuant to the Bond Order. Put differently, *United Reporting* was about whether or not United Reporting could access police department internal records, while this case is about whether or not public records regarding *entire classes of criminal defendants* should be *removed and restricted by default*, without reaching any particularized determination as to a need for secrecy in specific cases.

Moreover, there are three other key distinctions that significantly distinguish *United Reporting* from the facts of this case: (1) *United Reporting* involved the State of California passing a statute that restricted the information at issue, whereas this case involves *local district court judges* restricting public records; (2) *United Reporting* involved law enforcement agencies publishing their own internal records, whereas this case involves the government publishing public criminal trial records, as it had done by default in the past; and (3)

---

[34] *See generally*, *United Reporting*, 528 U.S. 32.

*United Reporting* involved government agencies publishing internal information pursuant to a statute that was then changed, whereas this case involves the District Clerk publishing public records pursuant to the First and Sixth Amendments to the U.S. Constitution and Texas State law.

The district court considered these points, and believed that they were "distinctions without a difference."[35] To the contrary, each distinction carries quite a large difference. Beginning with the distinction between arrestees versus criminal defendants, the difference is that the First and Sixth Amendments both apply in full force to the latter (as will be discussed in greater detail *ante*), but not at all to the former. Then, with the distinction between the State of California passing a statute versus local district judges issuing an order to another agency, the difference is that a State has the authority and processes to change its own law about its own information that the public can participate in, whereas here, the judges lacked the authority to issue a binding order to another elected official with respect to official public records, and had no avenues for participation. Finally, with the distinctions between the *content* (internal police arrest records versus public records of bonds) and *source* (state statute versus the Bill of

---

[35] ROA.238.

Rights) of the information, the differences are, again, the nature of the law applied and the rights at issue.

As a result, while *United Reporting* may bear some facial similarity with this case, the distinctions are too foundational to ignore, and make it entirely inapplicable.

## 1. Appellant has a clear right to the information at issue under the First Amendment, Sixth Amendment, and Texas State law.

The primary right at issue in this case is multifaceted, and can be viewed from different sides of the same proverbial coin. Broadly at issue is the public's right to view the entirety of a public record that is a court-issued bond in a criminal case, including the criminal defendant's personal contact information, which stems from both the First and the Sixth Amendments.[36] It also could be considered through the lens of the harm done here, namely a significant burden (arguably a prior

---

[36] *See, e.g, Press-Enterprise Co. v. Superior Court of California*, 464 U.S. 501 (1984); *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596 (1982); *Richmond Newspapers v. Virginia*, 448 U.S. 555 (1980); *Nixon v. Warner Commc'ns*, 435 U.S. 589 (1978); *SEC v. Van Waeyenberghe*, 990 F.2d 845 (5th Cir. 1993); *United States v. Chagra*, 701 F.2d 354 (5th Cir. 1983); *IDT Corp v. eBay, Inc.*, 709 F.3d 1220 (8th Cir. 2013); *In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569 (8th Cir. 1988); *Seattle Times Co. v. United States Dist. Court for Western Dist.*, 845 F.2d 1513 (9th Cir. 1988); *United States v. Amodeo*, 71 F.3d 1044 (2d Cir. 1995); *Grove Fresh Distribs. v. Everfresh Juice Co.*, 24 F.3d 893 (7th Cir. 1994); *ACLU v. Holder*, 652 F. Supp. 2d 654 (E.D. Va. 2009).

restraint) on protected commercial speech in the form of attorney advertising.[37] Further still, it could be considered through the lens of criminal defendants who are negatively impacted by failing to receive attorney advertisements;[38] as the Fourth Circuit noted in *Ficker*,

> we have little difficulty in concluding that the Maryland law [forbidding lawyers from sending mail advertisements to criminal and traffic defendants within thirty days of arrest] implicates First Amendment interests — perhaps most significantly the interests of criminal and traffic defendants in receiving information about legal representation. Recipients retain an independent First Amendment interest in acquiring such information, even when that information could be obtained by other means. *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council*, 425 U.S. 748, 757 n.15 (1976). Recognizing the importance of this interest, the Supreme Court observed in *Bates v. State Bar of Arizona* that the dissemination of advertising information to the public had the potential to contribute substantially to fair legal process. 433 U.S. 350, 376 (1977). Similarly, in *Peel v. Attorney Registration and Disciplinary Comm'n of Ill.*, 496 U.S. 91, 110 (1990), the Court noted that such advertising "facilitates the consumer's access to legal services and thus better serves the administration of justice." In the instant case three Maryland residents — Gary Brewer, Miguel

---

[37] *See, e.g., Shapero v. Kentucky Bar Ass'n*, 486 U.S. 466 (1988); *Pruett v. Harris Cty. Bail Bond Bd.*, 499 F.3d 403, 408 (5th Cir. 2007); *Ficker v. Curran*, 119 F.3d 1150 (4th Cir. 1997); Texas Office of the Attorney General's Opinion No. JC-0022 (issued Mar. 12, 1999).

[38] *See also* ROA.14 (¶ 14, noting the myriad public benefits of private criminal defense attorney advertising).

Hernandez, and Steven Rhodes — appear as amicae urging this court to take notice of the interests of the consumer of legal services. Brewer, Hernandez, and Rhodes have all faced Driving While Intoxicated (DWI) charges in Maryland, and all three found solicitation letters from attorneys to be of assistance in protecting their rights and in selecting an affordable lawyer in a timely fashion.[39]

As in *Ficker*, the Bond Order at issue here serves as a functional bar to the kind of targeted advertising that Maryland unsuccessfully forbade by statute. Even if such advertising was only delayed by the Bond Order (which Appellant does not concede), *Ficker* recognizes the reality that for criminal defendants, time is of the essence to retain counsel and ensure that all their rights are maintained from the outset of the proceedings against them, as some rights may be waived through inaction during that time period.[40]

Moreover, as the district court noted in its order soliciting further case citations on specific questions, Texas State law also reserves the designation of what information is considered "confidential" to the Texas legislature.[41] Indeed, the Texas Open Records Act is expressly supposed to be "liberally construed in favor" of providing information as part of the "fundamental philosophy of the American constitutional

---

[39] *Ficker*, 119 F.3d at 1153 (citations expanded).

[40] *See id.* (noting the potential loss of rights).

[41] ROA.220–21 (n. 1).

form of representative government."[42] It even references "information that is also contained in a public court record" as an enumerated category of "public information."[43] With respect to the contact information at issue here, it only protects that information for certain classes of persons, and even then, such protection is exempted with respect to "*[a]ll documents* filed with a county clerk and all documents filed with a district clerk."[44] And when it comes to criminal procedure, the State has specific procedures for sealing documents once a proceeding is complete,[45] or for protecting information surrounding certain classes of criminal victims.[46] Thus, it is clear that unless information is specifically protected by state law, it is presumed to be public.

Putting all of that together, as Justice Douglas famously noted, the "specific guarantees in the Bill of Rights have penumbras, formed by emanations from those guarantees that help give them life and substance."[47] Here, it seems clear that the public right of access to the

---

[42] Tex. Gov't Code § 552.001.

[43] Tex. Gov't Code § 552.022(a)(17).

[44] Tex. Gov't Code § 552.117(b) (emphasis added).

[45] *See, e.g.,* Tex. Code Crim. Proc. Ch. 55A, *et seq.* (regarding expunction).

[46] *See, e.g.,* Tex. Code Crim. Proc. Ch. 58, *et seq.* (regarding confidentiality of certain information of certain sex offense, stalking, family violence, trafficking, and child victims).

[47] *Griswold v. Connecticut*, 381 U.S. 479, 484 (1965) (internal citation omitted).

bond information at issue, Appellant's right of access to that information for the purpose of attorney advertising, and criminal defendants' right to have the information in the public, are all well within the "umbra" of the First Amendment, Sixth Amendment, and Texas State law. If the lack of discreet phrasing to that effect takes it outside of that direct "umbra," it is clearly within the "penumbra" of those guarantees. As a result, even if the order were not issued *ultra vires*, it is still facially unconstitutional.

2. **Appellant independently also has a right to redress from the harm caused by an *ultra vires* action.**

Irrespective of the nature of the substantive right burdened by the Bond Order, as the district court recognized in *Scham*, Appellant has a right to be free from harm by the overextension of governmental authority.[48] Put differently, in holding that the Felony Court's order in that case was *ultra vires*, the district court ultimately determined that an independent right to the information in question (as Appellant established *supra*) was not necessary to hold that the Constitution is

---

[48] *Scham*, 967 F. Supp. at 232–34 (primarily citing *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1974)). It also violates procedural due process, as no procedure was provided whatsoever in the issuance of the Bond Order. *See Mathews v. Eldridge*, 424 U.S. 319 (1976).

violated when the government goes beyond its authority.[49] It recognized, if implicitly, that the *ultra vires* doctrine itself creates a cause of action of the *ultra vires* action causes a cognizable harm.[50]

Here, the Bond Order was issued to a separate elected official and her office (Harris County District Clerk) to keep *all* information (including contact information) confidential except the title, filing date, and page enumeration on *all* General Order Bonds (GOBs) and Personal Bonds (PR Bonds).[51] Significantly, it was *not* issued pursuant to any case or controversy.[52] District Clerk Marilyn Burgess has gone beyond enforcing the four corners of the Bond Order, and has made other Bonds from both the Misdemeanor and Felony Courts confidential.[53] The only cited basis for restricting access to the information at issue stems from Tex. R. Jud. Admin. 12.5(d), but that only affects "judicial records," which are defined in that very rule as "a record made or maintained by or for a court or judicial agency in its

---

[49] *Id.; see also Leedom v. Kyne*, 358 U.S. 184 (1958); *City of El Paso v. Heinrich*, 284 S.W.3d 366 (Tex. 2009).

[50] *Id.; see also Ex parte Young*, 209 U.S. 123 (1908), *Larson v. Domestic & Foreign Commerce Corp*, 337 U.S. 682, 701–02 (1949) ("the action of an officer of the sovereign . . . can be regarded as so 'illegal' as to permit a suit for specific relief against the officer as an individual only if it is not within the officer's statutory powers").

[51] ROA.11–12 (¶ 5), *see also* ROA.33 (Bond Order).

[52] ROA.17 (¶ 25).

[53] ROA.12 (¶ 6); *see also* ROA.197–201 (Doc. 27, Appellant's supplement describing further restrictions and damages).

regular course of business but not pertaining to its adjudicative function, regardless of whether that function relates to a specific case. A record of any nature created, produced, or filed in connection with any matter that is or has been before a court is not a judicial record." Tex. R. Jud. Admin. 12.2(d). As a result, there is no constitutional or statutory basis for the Bond Order, and it must be considered *ultra vires*.

### 3.  None of Appellees' immunities claimed below apply.

Judicial immunity only protects "acts performed in the exercise of [Defendants'] *judicial* functions,"[54] and *Appellees agree* that the Bond Order is an exercise of their *administrative* function.[55] In fact, one of Appellees' major citations below is to a Fifth Circuit case that they claim extended protection to county court at law judges acting "administratively,"[56] but an actual look at the case says the opposite. The Fifth Circuit expressly ruled that the promulgation of bail schedules was so "inextricably linked" to the act of actually determining bail in individual cases that setting bail schedules was "a *judicial* act."[57] Here, Appellees themselves agree that the decision to publish or hide the

---

[54] *Black v. Griffin*, 638 F. Appx. 371, 372 (5th Cir. 2016) (emphasis added).

[55] ROA.155–56 (¶¶ 3, 6).

[56] ROA.159 (¶ 18).

[57] *Daves v. Dallas Cty.*, 22 F.4th 522, 540 (5th Cir. 2022) (emphasis added).

information contained on a bond is purely administrative, and there is no link to any judicial act or discretion that would require immunity.

With respect to qualified immunity, the defense is only available to officials acting within the scope of their discretionary authority, which would, by definition, not include actions taken *ultra vires*.[58] But even if Appellees were entitled to raise qualified immunity, and even if the Court found that qualified immunity applies, it only immunizes Appellees from money damages, not from equitable remedies.[59] As a result, it would not warrant dismissal of the case.

Finally, with respect to Appellees' claim to official immunity, it is an affirmative defense under Texas state law that must be *conclusively established* by the official claiming the immunity.[60] For the myriad reasons stated throughout this litigation to this point, Appellees have clearly failed their burden, and have, to this point, merely pointed to its existence rather than actually establishing their entitlement to it.

---

[58] *Sweetin v. City of Texas City*, 48 F.4th 387 (5th Cir. 2022).

[59] *See, e.g., Chrissy F. by Medley v. Miss. Dep't of Pub. Welfare*, 925 F.2d 844, 849 (5th Cir. 1991).

[60] *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994); *see also Telthorster v. Tennell*, 92 S.W.3d 457, 460 (Tex. 2002).

# Conclusion

For the foregoing reasons, Appellant respectfully requests that this Court **REVERSE** the district court's dismissal of his claims, **REVERSE** the denial of his temporary restraining order, and **REMAND** for further proceedings.

*/s/ Alexander C. Johnson*
Alexander C. Johnson
Kallinen Law PLLC
State Bar of Texas
 Bar No. 24123583
alex@acj.legal
511 Broadway Street
Houston, Texas 77012
Telephone: 573.340.3316
**Attorney for Appellant**

*/s/ Randall L. Kallinen*
Randall L. Kallinen
Kallinen Law PLLC
State Bar of Texas
 Bar No. 00790995
attorneykallinen@aol.com
511 Broadway Street
Houston, Texas 77012
Telephone: 713.320.3785
Fax: 713.893.6737
**Attorney for Appellant**

# CERTIFICATE OF SERVICE

I certify that on April 30th, 2025, the foregoing Brief was filed electronically using the Court's CM/ECF system, which will give notice to all counsel of record through the Court's ECF System.

*/s/ Alexander C. Johnson*
Alexander C. Johnson
**Attorney for Appellant**

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 5,201 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii). This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word version 16, and is set in Adobe Caslon Pro, size 14.

*/s/ Alexander C. Johnson*
Alexander C. Johnson
**Attorney for Appellant**